

**SIGNED this 6th day of March, 2012**

```
                              _____
                                    Shelley D. Rucker
                              UNITED STATES BANKRUPTCY JUDGE
```

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| In re: | No. 11-10251 |
| | Chapter 11 |
| DIANE DANIEL MASON, | |
|     Debtor; | |
| | |
| DIANE MASON, | |
|     Plaintiff | |
| v | Adversary Proceeding |
| | No. 11-1042 |
| JEFF LOWE, individually, JEFF LOWE HOMEBUILDERS, INC. | |
|     Defendants. | |
| v | |
| PHILIP McAFEE | |
|     Intervening Plaintiff. | |

**MEMORANDUM**

The Plaintiff Debtor Diane Gray Mason ("Debtor") has moved for summary judgment in this adversary proceeding on the grounds of judicial estoppel. [Doc. No. 37].[1] The defendants Jeff Lowe and Jeff Lowe Homebuilders, Inc. (collectively "Defendants") moved for an extension of time to respond to the motion for summary judgment and have filed an opposition memorandum and supporting evidentiary materials. [Doc. Nos. 49-54]. The intervening plaintiff Phillip McAfee ("Intervening Plaintiff") has failed to file a timely response to the motion for summary judgment.

The court has reviewed the motion, the relevant briefing, the record, and the applicable law and now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. For the reasons explained *infra*, the court determines that the Debtor's motion for summary judgment will be DENIED, with the issue of the application of judicial estoppel being reserved to be readdressed following the submission of evidence at trial.

**I.     Background**

The Debtor filed a voluntary Chapter 11 bankruptcy petition on January 18, 2011. [Bankr. Case No. 11-10251, Doc. No. 1]. In her Schedule A the Debtor listed significant real estate interests that she owned in fee simple having a total value of $10,937,700. *Id.* at Doc. No. 1, pp. 6-10. On her Schedule F the Debtor listed the Intervening Plaintiff as an intervenor claimant in the lawsuit of *Mason v. Lowe*. *Id.* at Doc. No. 1, p. 27. On her Statement of Financial Affairs the Debtor listed several legal proceedings in which she was involved, including a civil action which she had filed in June of 2010 in Coffee County Chancery Court pertaining to accounting and misuse of funds against the Defendant Jeff Lowe, individually and Jeff Lowe

---

[1] All citations to docket entries refer to docket entries in Adversary Proceeding 11-1042, unless otherwise noted.

Home Builders, entitled *Diane Mason v. Jeff Lowe Home Builders*, Case Number 2010-cv-209 ("State Court Action"). *See id.* at Doc. No. 1, p. 43.

The State Court Action was a petition for accounting the discovery of other documents from Mr. Lowe. The petition stated in part:

> The Plaintiff and Defendants have had several business ventures within the confines of Coffee County, Tennessee.
> These business ventures include but are not limited to construction projects, such as the Woodridge Development within the confines of Coffee County, Tennessee, and working together in business Suds and Bubbles Car Wash and Sparkling Clean Car Wash.
> The Plaintiff has verbally requested that the Defendant provide information with regard to the businesses for accounting purposes as well as tax purposes. The Defendant failed to provide any of the requested information.
> . . .
> The Plaintiff seeks an Order from this Honorable Court setting a FOURTEEN (14) CALENDAR DAY deadline from the date of the entry of this Order to produce any and all documentation possessed by the Defendants for *any and all* business ventures between the Plaintiff and the Defendants. This includes but is not limited to cancelled checks, receipts, draws, bills or invoices, banking account statements, accounting books or any other similar financial records or documents.
> The Plaintiff cannot discover this information without the production of the documents by the Defendants, as such information requested is not readily available to the Plaintiff and is possessed by the Defendants.
> The parties did not have a written agreement as to any business matters. However, the Plaintiff seeks an accounting pursuant to T.C.A. § 61-1-202 under the Revised Uniform Partnership Act, which provides that "the association of two (2) or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership."

[Doc. No. 1-1, Petition, ¶¶ 1-8]. In the State Court Action the Debtor sought an order for the production of all business records between the parties and costs and expenses.

In their opposition to the Debtor's motion for summary judgment, the Defendants have provided evidence of a letter dated November 5, 2009 sent by the Debtor's attorney prior to the filing of the State Court Action. [Doc. No. 51, Ex.2, p. 8]. In the letter the Debtor's attorney clarified the Debtor's position that she and the Defendants were engaged in a partnership under Tennessee law. *Id.* The letter states in part:

> You and Ms. Mason had an implied partnership with the business matters that

Page 3

> you both engaged in. Moreover, pursuant to T.C.A. § 61-1-202 under the Revised Uniform Partnership Act, "the association of two (2) or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership." Both of you all would contribute to the transactions, whether it would be monetarily or with labor, with the intent that both of you all would profit monetarily from the transactions. It is not subject to a reasonable dispute that you both had a partnership.

*Id.*

On June 29, 2010 the Intervening Plaintiff filed a motion to intervene and an intervening complaint in the State Court Action. [Doc. No. 1-1, pp. 12-31, Intervening Complaint, Motion to Intervene]. On July 28, 2010 the chancery court entered an agreed order granting the Intervening Plaintiff's motion to intervene. [Doc. No. 1-1, p. 32].

The Intervening Complaint asserted that the Debtor and Defendant Jeff Lowe were involved in a partnership in several business ventures, including the Suds and Bubbles Car Wash. [Doc. No. 1-1, p. 13, ¶ 5]. The Intervening Plaintiff alleged that he loaned money to the Debtor's and Defendant Lowe's partnership that has not been repaid in full:

> Intervening Plaintiff Philip McAfee loaned moneys to the Mason-Lowe Partnership through partner Jeff Lowe for use in the construction and equipping of the Suds and Bubbles Car Wash. Suds and Bubbles Car Wash consists of a self-serve car wash with individual wash bays, an automatic car wash and a self-serve Laundromat. Moneys were advanced to Jeff Lowe for the Mason-Lowe Partnership over a period of several months, for a total of Two Hundred and Eighty-Three Thousand Nine Hundred Seventy Three Dollars ($283,973.00). The initial monies advanced were for the purchase of an automatic car wash, but the loan was broadened to include monies for equipping the laundromat and completion of construction of the project. The moneys were loaned to the Mason-Lowe Partnership with the understanding that said moneys were to be used by the partnership to remodel, upgrade, and purchase equipment for the Suds and Bubbles Car Wash.

Intervening Complaint, ¶ 5. The Intervening Plaintiff alleges that the Defendant Lowe only repaid $30,548.90 of the money that he loaned to the partnership between the Debtor and the Defendant Lowe. *Id.* at ¶ 6. The Intervening Complaint further contends that:

> [a] dispute has arisen between partners Diane Mason and Jeff Lowe. Upon the dispute arising between the Mason-Lowe Partners, payments to the Intervening Plaintiff ceased, which was on or about the time that Diane Mason assumed

> management and control of the Suds and Bubbles Car Wash.
>
> Diane Mason, has failed or refused to remit any payments to Philip McAfee toward the satisfaction of the indebtedness owed to him, since such time as she assumed operation and control of "Suds and Bubbles".

*Id.* at ¶¶ 7-8. The Intervening Complaint sought a judgment against the Debtor and Defendant Lowe for the balance owed on the note, plus pre-judgment and post-judgment interest. *Id.* at p. 15.

The Intervening Complaint included an exhibit of a copy of a note signed by Defendant Lowe and the Intervening Plaintiff ("Note") with a signature of a notary witness. [Doc. No. 1-1, p. 17]. The Note is dated July 11, 2008. It states:

> I, Jeffery Scott Lowe date of birth 08-08-1967, social security number . . . , owe Philip McAfee date of birth 07-30-1943 $180,000.00. After construction this note will be amortized and put on monthly payments at 8% interest. The parties will agree to terms of payments after construction. Mr. McAfee will be assigned an $180,000.00 portion of Mr. Lowe's life insurance policy by a certificate of insurance for $180,000.00 to be acquired from Bill Nickels insurance. This insurance assignment will be Mr. McAfee's security for the debt. The purpose of this loan is to purchase an automatic car wash to be installed at 1321 Hillsboro Blvd Manchester, TN 37355.

*Id.*

On April 18, 2011 the Debtor filed a Notice of Removal removing the State Court Action to this court. [Doc. No. 1]. On May 13, 2011 the Plaintiff filed a motion to amend her petition for accounting. [Doc. No. 3]. This court granted the motion on June 7, 2011. [Doc. No. 5]. The amended petition ("Amended Petition") states in part:

> Debtor amends her Petition in order to clarify representations and averments made in the State Court Action.
> Beginning in 2003, Debtor provided funds to Defendants for the construction of certain building projects within Coffee County, Tennessee.
> Defendant, Jeff Lowe, was an employee of Debtor at Debtor's businesses, Suds and Bubbles carwash and Sparkle N' Clean carwash. Defendant Lowe received a set salary while working for Debtor and received free housing from Debtor. Defendant Lowe's duties as an employee included maintaining Debtor's two carwashes and paying all bills from funds provided by Debtor. In 2008, Defendant Lowe approached Debtor regarding certain repairs and replacements needed at Debtor's two carwashes. Based upon Defendant Lowe's statements,

>Debtor provided funds to Defendants for the repairs and replacements needed. Based upon information and belief, Defendants misappropriated the funds provided by Debtor.
>
>The Debtor seeks an Order from this Honorable Court requiring Defendants to produce any and all documentation possessed by Defendants regarding the disposition of Debtor's funds by the Defendants. Such documents requested includes, but is not limited to, cancelled checks, receipts, draws, bills or invoices, banking account statements, accounting books or any other similar financial records of documents.
>
>Debtor further requests a specific accounting from Defendants regarding the misappropriation of funds provided by Debtor, and a judgment against Defendants for any such amounts determined by the Court to have been misappropriated.

Amended Petition, ¶¶ 5-11.

On August 9, 2010, the Debtor and Lowe entered into an agreed order providing the accounting for the Woodbridge Development and the two car washes. [Doc. No. 1-2, p. 34]. The Plaintiff now moves for summary judgment on the grounds of judicial estoppel. In support of her motion she has provided the court with deposition testimony of the Defendant Lowe given on July 15, 2008, in a prior civil action pertaining to his divorce from his former spouse, Cindy Lowe. [Doc. No. 37-1, Ex. A, *Cindy T. Lowe v. Jeffery S. Lowe*, General Sessions Court for Coffee County, Tennessee, Case Nos. 07-243, 0702033 ("Divorce Proceeding")]. In a deposition relating to the Divorce Proceeding, the Defendant Lowe testified to the following regarding his relationship with the Debtor:

>Counsel:   You sold [the Debtor] the lot before you built the office?
>Lowe:      I don't remember if it was before, during, or after the office was completed.
>Counsel:   Are there closing statements on that?
>Lowe:      I'm sure there are, yes.
>Counsel:   How much did you sell her the lot for?
>Lowe:      The same thing I gave for it. I was just trying to get out from underneath it, which was either 55– but by the time the interest had built up at the bank, I think it was 59–somewhere in the neighborhood of 59 or 60,000.
>Counsel:   What did you sell the building for?
>Lowe:      I didn't. I just constructed it. It was a construction project I was doing for her.
>Counsel:   She paid you to construct the building.
>Lowe:      No, I just did it for her.

> Counsel: Let me get this. You're telling me you built that building that the attorney general is in right now, and I've been in there, it's a very nice building. You're telling me you built that for her for nothing?
> Lowe: Yes. I'm telling you I built it with the intentions of some day being a partner with her, but I can't afford to be a partner. I can't borrow —
> Counsel: Why would you build that for nothing?
> Lowe: I just told you, Ms. Gray is very good to me.

[Doc. No. 37-1, Ex. A, pp. 2-3]. He further testified that he owned no interest in either of the car wash businesses that the Plaintiff owns. *Id.* at p. 4.

The Plaintiff also relies on the deposition of Defendant Lowe and the Intervening Plaintiff taken in this adversary proceeding in support of her motion for summary judgment. In his deposition taken on October 3, 2011 in this proceeding, Defendant Lowe testified to the following:

> Counsel: . . . So on all with the mini mall, when you purchased the property you were partners?
> Lowe: Yes.
> Counsel: The two car washes, when you purchased the properties you were partners?
> Lowe: Yes. Uh-huh.
> Counsel: And then with Woodridge Subdivision, when you purchased those properties?
> Lowe: We went into it, yes.
> Counsel: All right. Do you remember giving your deposition in your divorce case?
> Lowe: Yes, I do.
> Counsel: Do you remember what you said about being a partner with Diane Mason in your divorce case?
> Lowe: Yes, I do.
> Counsel: What did you say?
> Lowe: I said no.
> Counsel: You said you weren't?
> Lowe: Yes.
> Counsel: But you were, weren't you?
> Lowe: Yes.
> Counsel: Okay. So you lied under oath in your deposition in your divorce case?
> Lowe: Yes.
> Counsel: And why did you do that?
> Lowe: Because that's what Ms. Mason told me to do.

[Doc. No. 37-2, Ex. B, pp. 2-3]. In response to a question regarding how Ms. Mason asked him

to testify in his divorce proceeding, Mr. Lowe responded, "[s]he just didn't want – we didn't need to, I believe her exact quote was, muddy the waters." [Doc. No. 51, p. 5]. He further testified that ". . . there was nothing to explain. The property had been in her name, so it wasn't like– there was nothing to explain. She just said we didn't need to cloud the waters and I agreed with that." *Id.* at p. 6.

The Plaintiff has also provided testimony from the Intervening Plaintiff indicating that his understanding of the existence of a partnership between the Plaintiff and Defendant Lowe came from conversations that he had with Defendant Lowe and not with the Plaintiff. [Doc. No. 37-3, Ex. C, pp. 2-3].

**II.     Standard of Review**

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec. 7, 2011).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822

F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The Defendant Lowe has filed a response opposing the Plaintiff's motion for summary judgment.

### III.    Analysis

The Plaintiff asserts that the doctrine of judicial estoppel precludes the Defendant Lowe from contradicting his prior sworn statement in his deposition testimony in the Divorce Proceeding. Thus, she claims that Lowe's assertion that he was not a partner with the Plaintiff must stand, and Defendant Lowe is barred from arguing otherwise.

In *State of New Hampshire v. Maine*, the United States Supreme Court described the doctrine of judicial estoppel:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." . . .
>
> Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is "to protect the integrity of the judicial process," by prohibiting parties from deliberately changing positions according to the exigencies of the moment," . . . . Because the rule is intended to prevent "improper use of judicial machinery," judicial estoppel "is an equitable doctrine invoked by a court at its discretion," . . . .
>
> . . . . [s]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its early position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial

> integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. . . .
>
> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

532 U.S. 742, 749-751, 121 S.Ct. 1808, 1814-1815 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555 (1895) and *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8, 120 S.Ct. 2143 (2000)) (other quotations and citations omitted).

In Tennessee courts also apply the doctrine of judicial estoppel under certain circumstances. For example, in *Cracker Barrel Old Country Store v. Epperson*, the Tennessee Supreme Court described the doctrine in this manner:

> The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, on broad grounds of public policy, to uphold the *sanctity of an oath.* The *sworn statement* is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth. It is not merely an admission, but an absolute bar.
>
> While the doctrine of judicial estoppel is applied to prohibit a party from taking "a position that is directly contrary to or inconsistent with a position previously taken by the party," the doctrine generally only applies to "sworn statements made in the course of judicial proceedings."

284 S.W.3d 303, 314 (Tenn. Sup. Ct. 2009) (quoting *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. Sup. Ct. 1999)) (other quotations omitted).

Further,

> [u]nder the doctrine of judicial estoppel "a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by this action.

*Marcus*, 993 S.W.2d at 602. Tennessee courts impose a bar on subsequent inconsistent testimony to protect the integrity of the judicial proceedings:

> [l]itigants should not be allowed to obtain an advantage or attempt to do so by

pleading inconsistent facts within their personal knowledge in two lawsuits with the possibility of prevailing in both suits. In *Woods v. Woods*, 638 S.W.2d 403 (Tenn. Ct. App. 1982), this Court discussed the application of judicial estoppel:

> Judicial estoppel is, strictly speaking, not a true estoppel. It has been termed a *quasi* estoppel which estops a party from playing fast and loose with the courts by contradicting a previous position or previous testimony during a course of litigation or during a subsequent action.
>
> The doctrine of judicial estoppel applies only where there has been a willful misstatement of fact–that is, perjury.

*Werne v. Sanderson*, 954 S.W.2d 742, 745 (Tenn. Ct. App. 1997) (quoting *Woods*, 708 S.W.2d at 405-06). Under Tennessee law judicial estoppel may apply even when the parties in the subsequent proceeding are not the same. *See Bubis v. Blackman*, 435 S.W.2d 492, 498 (Tenn. Ct. App. 1968). However, "[j]udicial estoppel is not favored in Tennessee." *Guzman v. Alvares*, 205 S.W.3d 375, 382 (Tenn. Sup. Ct. 2006) (citing *Layhew v. Dixon*, 527 S.W.2d 739, 741 (Tenn. Sup. Ct. 1975)).

In addition, judicial estoppel, as an equitable doctrine, may be denied under circumstances in which the party benefitting from the estoppel has "unclean hands" as the term has been defined in the relevant case law. Tennessee courts recognize the doctrine of "unclean hands" as it applies to matters of equity. For example, in *In re Estate of Boote* the court of appeals explained:

> The doctrine of unclean hands is a fundamental tenet of the courts of equity. It is intended to protect the courts, and it is based on the principles that he who seeks equity must do equity and that he who has done inequity cannot have equity. When the doctrine applies, it provides the court with a basis to decline to grant relief to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts with regard to the subject matter of their claims.

265 S.W.3d 402, 417 (Tenn. Ct. App. 2007). Moreover,

> if it appear from the case made by [the plaintiff], or by his adversary, that [the plaintiff] has himself been guilty of unconscientious, inequitable, or immoral conduct, in and about the same matters whereof he complains of his adversary, or if his claim to relief grows out of, or depends upon, or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the court.

*Seymour v. Seymour*, No. 03A01-9712-CH-00535, 1998 WL 761854 (Tenn. Ct. App. Oct. 30, 1998) (quoting *Continental Bankers Life Ins. Co. v. Simmons*, 561 S.W.2d 460, 464-65 (Tenn. Ct. App. 1977)). Further, "[t]he evidentiary standard when assessing the evidentiary foundation for an argument that the unclean hands doctrine should be applied is the preponderance of the evidence standard." *In re Estate of Boote*, 265 S.W.3d at 418.

Courts have refused to apply the doctrine of judicial estoppel where there is a question regarding whether the party seeking to benefit from the application of the doctrine is guilty of "unclean hands." For example, as one state court examining the doctrine of judicial estoppel noted:

> . . . because judicial estoppel is *an equitable doctrine* invoked at a court's discretion, *New Hampshire*, we do not believe it is properly invoked by Johnson & Johnson Defendants, who come before the Court with unclean hands by virtue of their commission of deceptive acts and practices that run afoul of the [consumer protection law].

*Commonwealth v. TAP Pharmaceutical Products, Inc.*, __ A.3d __, 2011 WL 3946941, at *31 (Pa. Commw. Ct. Aug. 31, 2011) (citing *New Hampshire*, 532 U.S. at 749-51 and *In re Adoption of S.A.J.*, 838 A.2d 616 (Pa. Sup. Ct. 2003)). *See also, Synopsis, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923, 2006 WL 825277, at *7 (N.D. Cal. Mar. 30, 2006) (denying motion for summary judgment where triable issue of fact existed regarding the application of judicial estoppel and unclean hands).

In this case it appears from the deposition transcript of Defendant Lowe that there is an issue of material fact regarding whether the Plaintiff persuaded the Defendant Lowe to commit perjury in the Divorce Proceeding and therefore has unclean hands. If the Plaintiff was guilty of suborning perjury in the Divorce Proceeding, then the court may exercise its discretion to conclude that she is not entitled to the benefit of the doctrine of judicial estoppel since the statements on which she bases the estoppel argument were due to her own illegal or immoral conduct. Resolving questions of whether the Plaintiff was guilty of "unclean hands" in

persuading the Defendant Lowe to commit perjury in his Divorce Proceeding so that his ex-wife could not "muddy the waters" of the Debtor's businesses will require a fact-intensive inquiry involving credibility determinations.

> Decisions regarding the proper application of the doctrine of unclean hands are heavily fact-dependent and are addressed to the considerable discretion of the trial court. Accordingly, credibility determinations can be pivotal, and the trial court is in the best position to make these determinations because it has the opportunity to view the witnesses as they are testifying.

*In re Estate of Boote*, 265 S.W.3d at 418. In addition, the doctrine of "unclean hands" may be raised by the court and does not have to be pled by a party. *Gilley v. Jernigan*, 597 S.W.2d 313, 318 (Tenn. Ct. App. 1979) (citing *Sartain v. Dixie Coal & Iron Co.*, 266 S.W. 313, 317 (Tenn. Sup. Ct. 1924)). The court's finding of an issue of fact with respect to judicial estoppel is further bolstered by the Debtor's own contention for six months in the state court proceeding that her relationship with Defendant Lowe was one of partnership. [Doc. No. 51, Ex. 2; Doc. No. 1-1].

    The court concludes that there is a genuine issue of material fact regarding whether the Plaintiff is entitled to benefit from the equitable doctrine of judicial estoppel. The Defendant Lowe clearly testified that he lied under oath in the deposition in his Divorce Proceeding because "that's what Ms. Mason told me to do." [Doc. No. 37-2, Ex. B, p. 3]. If the Defendant Lowe's deposition testimony in this proceeding is to be believed, then it is possible that the Plaintiff was suborning perjury. *See e.g.*, *Hicks v. State*, 232 S.W.2d 39, 41 (1950) ("[s]ubornation of perjury consists of two essential elements: (1) There must be the procuring of one of false swearing by another, and (2) the persons so solicited must actually swear falsely to a material matter"). Resolution of this issue of fact will require this court to weigh the credibility of the parties' testimony. Therefore, the court will DENY the Plaintiff's motion for summary judgment and will leave open the question of whether the doctrine of judicial estoppel bars the Defendant Lowe from asserting that he and the Plaintiff were partners based on this court's determination of whether the Plaintiff has "unclean hands."

### IV.     Conclusion

As described *supra*, the Plaintiff's motion for summary judgment will be DENIED. The issues of judicial estoppel and unclean hands may be reserved and reopened following evidence regarding those issues at the trial in this matter.

A separate order will enter.

# # #